**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


IDEARC MEDIA CORP.,
f/k/a VERIZON DIRECTORIES CORP.,

      Plaintiff/Counter-Defendant,

vs.                                                                    CASE NO.: 8:07-CV-1024-T-17EAJ

KIMSEY & ASSOCIATES, P.A.,
d/b/a KIMSEY LAW GROUP.

      Defendant/Counter-Claimant.

_____/

## ORDER ON MOTION TO DISMISS FOR FRAUD UPON THE COURT, OR ALTERNATIVELY, MOTION TO STRIKE EXHIBITS

This cause is before the Court on Plaintiff, IDEARC MEDIA CORP.'s (hereinafter "Idearc"), Motion to Dismiss for Fraud upon the Court and the alternative Motion to Strike Exhibits (Dkt. 65) and Defendant, KIMSEY & ASSOCIATES, P.A.'s (hereinafter "Kimsey"), response thereto (Dkt. 70). For the reasons set forth below, the Plaintiff's Motion to Dismiss for Fraud upon the Court is **DENIED**. Also for reasons set forth below, the Plaintiff's alternative Motion to Strike Exhibits is moot and therefore is **DENIED**. Finally, for reasons set for below, Idearc's request for sanctions and attorneys' fees, and Kimsey's request for attorneys' fees are **DENIED**.


## BACKGROUND

This case is based on a dispute about an advertisement for the defendant law firm on the front cover of a telephone directory. On June 15, 2007, Idearc filed a complaint alleging Kimsey owed $1,126,948.40 in breach of contract for failure to pay for the advertisement (Dkt. 1). Kimsey answered and counterclaimed on September 10, 2007, alleging it is owed damages because its front cover advertisement was partially obscured by a so-called "tip-on" advertisement, which is an advertisement on a separate sheet of paper held onto the front cover of the telephone directory by adhesive (Dkt. 5). To support its counterclaim, Kimsey attached seven photographs of telephone books. (Dkt. 5-2). The photographs show Kimsey's advertisement covered to varying degrees by tip-on advertisements. The offending tip-ons are either placed too low on the phone book or are askew, and they cover Kimsey's name, telephone number or both. The advertisers on the tip-ons are other personal injury law firms.

Idearc alleges that during discovery it received an "anonymous tip" that these exhibits were fabricated, and subsequently located two former Kimsey employees to corroborate the story. (Dkt. 65, ¶ 6). Idearc attaches the deposition of the first employee, Michelle Nguyen (hereinafter "Nguyen") as Exhibit B to this motion. According to Idearc, in her deposition, Nguyen asserts that she moved the tip-ons at the behest of Paul S. Kimsey (hereinafter "Mr. Kimsey"), Kimsey's principal, to create the appearance that Kimsey's ads were obscured. (Dkt. 65, ¶ 7). She states in her deposition that she is "pretty sure" the photographs attached to Kimsey's counterclaim depict the phone books she altered. (Dkt. 65-3, 42:19). She also claims that Mr. Kimsey gave her a direct order to alter the phone books, showing her a phone book in his possession with a tip-on askew and stating: "Make them look like this." (Dkt. 65-3, 43:21). She further said that he referenced the important features of his advertisement that needed to be covered by the repositioned tip-on. (Dkt. 65-3: 43:21-22).

Kimsey counters that what Mr. Kimsey actually said to Nguyen was, "We need examples that look like this." (Dkt. 70, Pg. 4). Kimsey portrays Nguyen as an absentee employee who lied to Mr. Kimsey and may have attempted to sabotage cases. *Id.* Kimsey theorizes that her efforts to reposition tip-ons may have been to create an opportunity for "exacting revenge for her inevitable termination." *Id.* Kimsey offers an affidavit from another former employee, Tanya Struve (hereinafter "Struve"), who worked with Nguyen for about four months. (Dkt. 70, ¶ 3). Struve testifies as to Nguyen's mendacity and poor job performance. (Dkt. 70, ¶ 9). In addition, Struve claimed Nguyen told her she was planning on "bringing down Kimsey and his firm," or words to that effect. (Dkt. 70, ¶ 11). Kimsey alleges that Mr. Kimsey was not aware of Nguyen's conduct until her deposition on July 24, 2008. (Dkt. 70, Pg. 5).

The second employee, Monica Horne Vassiliadis (hereinafter "Vassiliadis"), a former marketing manager for Kimsey, alleges that she was also asked by Mr. Kimsey to move tip-ons, and was chided later for not doing so. (Dkt. 65, ¶ 7). Vassiliadis testified that a past error on the telephone book advertisement saved Kimsey a substantial amount on the advertising bill. (Dkt. 65-5, 16:24-25). At the time of the alleged incident, she stated that Kimsey was again looking to reduce bills. (Dkt. 65-5, 17:11-12). Vassiliadis reported to Mr. Kimsey that there were no mistakes on the telephone books. (Dkt. 65-5, 21:5). Then, "he basically implied for me to find them, to find something." (Dkt. 65-5, 21:7-8). "At that time, it was—at that time it was my impression that I was supposed to do what I could to find them. In other words, make it happen." (Dkt. 65-5, 21:15-18). Vassiliadis said she told Mr. Kimsey that there were no mistakes and not to ask again. (Dkt. 65-5, 21:22-23). A few weeks later, Mr. Kimsey "gave me grief over the fact that Michelle [Nguyen] did it, in talking about the books, Michelle did it, and I was supposed to be his buddy and I didn't do it." (Dkt. 65-5, 22:9-12).

Kimsey points out that Vassiliadis left the firm in December, 2006, and the counterclaim in this case wasn't filed until September, 10, 2007. (Dkt. 70, Pg. 7). Kimsey portrays Vassiliadis as resentful, angry that she had to work under an Orlando attorney "who she considered to be an incompetent, lazy slob." *Id.* Kimsey asserts that Mr. Kimsey never deliberately submitted exhibits that he knew or could have known were fraudulent. (Dkt. 70, Pg. 8). As soon as Mr. Kimsey learned of Nguyen's alleged impropriety, Kimsey claims, he issued the filing notice with the Court to withdraw the potentially fabricated exhibits. (Dkt. 70, Pg. 9). Kimsey notified the Court that, although there was no evidence to support Nguyen's assertions, the exhibits and references to them would be withdrawn. (Dkt. 69).

Idearc includes depositions that indicate that no customer or consumer ever complained about banner ads being covered by tip-ons, nor did any back stock of upwards of 100 phone books show tip-on problems. (Dkt. 65, ¶ 8(a)(e)(f)(g)). Kimsey counters by asserting that it has discovered other evidence of defective directories, including other phone books in its possession and the testimony of Idearc employees, who admit they had seen banner advertisements at least partially covered. (Dkt. 70, Pg. 6). Additionally, Kimsey offers affidavits from Mark Hamilton, Bruce Mesnekoff and Edward A. Dorskey all stating that they had seen or received a telephone book on which the Kimsey banner was covered by a tip-on advertisement. (Dkt. 72).

In addition to seeking a dismissal for fraud upon the Court or the alternative striking of the exhibits, Idearc requests that the Court: (1) Hold Paul Kimsey (a member of the bar of this court) in contempt of court and refer this matter to the Florida Bar; (2) Award attorneys' fees to Plaintiff and against the Defendant, its counsel and Paul Kimsey individually, for the time and expense of filing this motion and defending the scurrilous Counterclaim; and (3) Grant such other relief as appropriate under the Rule of Judicial Administration and the sad circumstances of

this grave matter. (Dkt. 65, Pg. 12). Kimsey counters by seeking attorneys' fees for the "time to prepare this completely unnecessary response." (Dkt. 70, Pg. 11).

**STANDARD OF REVIEW**

In the Middle District, "there is no question that a trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud upon the court." *Hughes v. Matchless Metal Polish Co.*, 2007 WL 2774214, *3 (2007) (*quoting Howard v. Risch*, 959 So.2d 308, 310 (Fla. 2d DCA 2007)); *see also Martin v. Autombili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335-1336 (11th Cir. 2002)). Fed.R.Civ.P. 41(b) allows the Court to dismiss for failure to comply with the Federal Rules of Civil Procedure or a court order, and states that "a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." "Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (*quoting Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). Such a dismissal is not proper unless "the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Id.* (*quoting Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1339 (11th Cir. 2005)). "Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct." *Id.* (*citing McKelvey v. AT&T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986)).

"Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of the jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud upon the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir.

1978).[1] The Eleventh Circuit has "consistently held that a fraud between parties is not fraud on the court." *Patterson v. Lew*, 265 Fed.Appx. 767, 769 (11th Cir. 2008). "We even declared in that case that perjury does not constitute fraud on the court." *Id.* (*citing S.E.C. v. ESM Group, In.*, 835 F.2d 270 (11th Cir. 1988)).

The power to discipline attorneys "ought to be exercised with great caution," yet is "incidental to all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (*quoting Ex parte Burr*, 9 Wheat. 529, 531 (1824)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44 (*citing Roadway Express, Inc. v. Piper*, 446 U.S. 752, 764). Under Fed.R.Civ.P. 11, the standard for testing conduct is "reasonableness under the circumstances." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (*quoting United States v. Milam*, 855 F.2d 739, 743 (11th Cir. 1988)). This is an objective standard, "more stringent than the original good-faith formula." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). "A federal district court is required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993), (*quoting Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331(11th Cir. 1992)).

## DISCUSSION

### A. Motion to Dismiss for Fraud upon the Court

Idearc asks for relief under Fed.R.Civ.P. 12 without specifying which subsection to that rule it would like the Court to apply. It can be inferred from the rule that Idearc references

---

[1] All decisions of the former Fifth Circuit Court of Appeals prior to October 1, 1981 are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Fed.R.Civ.P. 12(f) Motion to Strike. That rule is applicable to Idearc's alternative motion, but not to the Motion to Dismiss for Fraud upon the Court. Fraud claims may arise under Fed.R.Civ.P. 60(b)(3), which deals with post-trial relief. However, "a court also has the power to conduct an independent investigation to determine whether it has been the victim of fraud." *Martin*, 307 F.3d at 1335. To exercise its inherent power, a court must find that the party acted in bad faith. *Id.* (*Citing In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)).

Idearc is correct in that the rule adopted by the Eleventh Circuit indicates that fabricated evidence by an attorney may rise to the level of fraud upon the Court. *Rozier*, 573 F.2d at 1338. However, the evidence presented here is such that the Court cannot definitively state that these exhibits were fabricated. Idearc does offer substantial evidence that a fabrication did occur, and the Court can infer that Kimsey, at least in part, attempts to mitigate the impact of a fabrication by portraying Nguyen as a rogue agent who fabricated these exhibits to sabotage Mr. Kimsey.

But there is also evidence that these exhibits were not a fabrication. The assertion that they were develops first from an oblique "anonymous tip." The tip is allegedly corroborated by the two former Kimsey employees. The first, Nguyen, claims that she was given a direct order by Mr. Kimsey to fabricate evidence. (Dkt. 65-3, 43:21). She is "pretty sure" that evidence she fabricated ended up as the exhibits in question here. (Dkt. 65-3, 42:19). However, Kimsey offers evidence that Nguyen was a disgruntled employee with dark motives for the testimony she gave, calling her truthfulness into question. *Id.* Another former Kimsey employee corroborates this assertion (Dkt. 70, ¶ 3, 9, 11).

The testimony of the second employee, Vassiliadis, is more tenuous. She does not claim to have received a direct order to fabricate, only that Mr. Kimsey "implied," or that it was "my impression" that she was supposed to produce such evidence. (Dkt. 65-5, 21:7-8; 21:15-18).

Additionally, Kimsey has portrayed Vassiliadis as another disgruntled former employee. (Dkt. 70, Pg. 7). She left the company about eight months before the counterclaim with the exhibits in question were filed. *Id.*

The testimony of the former employees is countered by a number of witnesses that indicate that these exhibits do not exist in a vacuum, and that there is other evidence of misplaced tip-ons. That information, coupled with Mr. Kimsey's own assertions and the possible ulterior motives of Nguyen and Vassiliadis (Dkt. 70, Pg. 8) make it questionable whether fabrication occurred here, too questionable to punish Kimsey with dismissal, an extreme sanction meant to be one of last resort. *Zocaras*, 465 F.3d at 483. The policy reason is that "we strive to afford a litigant his or her day in court, if possible." *Betty K*, 432 F.3d at 1339 (*citing Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 (5th Cir. 1968)). Nothing submitted by Idearc is convincing enough of the existence of fabrications to take from Kimsey its day in court. Whether there has been fabrication is an open and disputed question.

However, even if these exhibits are fabricated, the existence of that fabrication alone is not enough to cause a dismissal in this case. Dismissal must be based on willful conduct, and mere negligence is not adequate. *Zocaras*, 465 F.3d at 483. Kimsey has offered evidence that fabrication done by Nguyen was without his knowledge. (Dkt. 70, Pgs. 4-5). Under *Martin*, the Court must find bad faith before it can exercise its inherent power to investigate fraud against the Court. 307 F.3d at 1335. Given the debatable nature of the two key witness' testimony, there is not enough evidence of bad faith here.

Fraud upon the Court is defined in the Eleventh Circuit as "only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of

adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." *S.E.C.*, 835 F.2d at 273 (*quoting Traveler's Indemnity Co. v. Gore*, 761 F.2d 1549 (11th Cir. 1985)). Neither fraud between two parties, nor even perjury, is fraud upon the Court. *Patterson*, 365 Fed.Appx. at 769.

As summed up by the Fourth Circuit: "Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible….Fraud on the court is therefore limited to more egregious forms of subversion of the legal process…those we cannot necessarily expect to be exposed by the normal adversary process." *Great Coastal Express v. International Broth. of Teamsters, Chauffeurs, Warehousemen*, 675 F.2d 1349, 1357 (4th Cir. 1982)). In the case of a discrepancy between a party's discovery responses and evidence attained by the opposing party, lacking a "clear showing of egregious conduct…allegations of inconsistency, non-disclosure, even falseness, can be brought to the jury's attention through cross-examination or impeachment." *Hughes*, 2007 WL 2774214 at *3 (*quoting Gehrmann v. City of Orlando* 962 So.2d 1059, 1061 (Fla. 5th DCA 2007)).

Nothing of what has occurred here has impinged the judicial machinery or proved subversive to the Court. The dispute over the evidence in the filings offered concerning this motion is the prototype of an adversarial debate. The fact that these exhibits are withdrawn well before a finding of fact or before summary judgment has been considered indicates that they have not nor will they impact or subvert the functioning of the judicial process no matter how fraudulent the exhibits may or may not be. If fraud exists here, it is between the parties and not a subject for dismissal.

Key for the Court from a policy standpoint is not whether the two parties involved are injured, but whether the public is injured. *S.E.C.*, 835 F.2d at 273 (*citing Gore*, 751 F.2d at 1552; *quoting Great Coastal Express*, 675 F.2d at 1356-1357). This case will proceed from here with no harm done by these exhibits to the judicial process. The public is protected.

The Court cannot identify proof substantial enough to indicate that the exhibits in question are fabricated. Even if there was adequate proof of fabrication, there is no firm indication of bad faith. The harm was between the parties and not to the Court, and did not rise to the high level required for the extreme sanction of dismissal with prejudice. Therefore, Idearc's Motion to Dismiss for Fraud upon the Court is **DENIED**.

### B. Alternate Motion to Strike Exhibits

Subsequent to Idearc's motion, Kimsey voluntarily withdrew the exhibits in question. (Dkt. 69), rendering Idearc's alternate motion moot. It is therefore **DENIED**.

### C. Parties' Call for the Court to Impose Sanctions or Attorneys' Fees

Kimsey spends much of its Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss defending itself against sanctions under Fed.R.Civ.P. 11. Idearc mentions possible sanctions under Rule 11 only once. (Dkt. 65, ¶ 9). As Kimsey points out, Idearc does not under its caption or "Wherefore" clause ask the Court to impose Rule 11 sanctions.

The Court, finding no fraud upon the Court perpetrated by Kimsey, will not on its own initiative under Fed.R.Civ.Pro.11(c)(3) or under Local Rule 2.04 contemplate sanctions. Even if the evidence in question was fabricated, given the evidence offered here, it was reasonable under the circumstances for Kimsey to believe at the time of signing that it was acting properly.

*Anderson*, 353 F.3d at 915; *Didie*, 988 F.2d at 1104. The Court has the incidental power to discipline an attorney. *Chambers*, 501 U.S. at 42. However, that potent responsibility will not be considered where the Court can identify no wrongdoing.

Kimsey argues that it is owed attorney's fees because Idearc, by asking for Rule 11 sanctions in the middle of its motion, nefariously attempted to hide its request and avoid the 21-day "safe harbor" provision found in the rule. (Dkt. 70, Pgs. 10-11). A motion for sanctions under Rule 11 "must be made separately from any other motion." Fed.R.Civ.P. 11(c)(2). There was no Rule 11 motion here in either filing. (Kimsey refused to file its own Rule 11 motion against Idearc. (Dkt. 70, Pg. 10)). Idearc's statement that sanctions "should be levied" against Kimsey reads, like the requests in the "Wherefore" clause, as a suggestion to the Court that it engage its inherent powers of sanction. If there had been a Rule 11 motion, then the court *may* award attorneys fees. Fed.R.Civ.P.11(c)(2). However, there was no Rule 11 motion, and Kimsey's Rule 11 response was superfluous and the time Kimsey's counsel spent in preparing that response was unnecessary.

Because there was no Rule 11 motion, and because this Court finds no grounds for sanction, the parties' requests for sanctions and attorneys' fees are thus **DENIED**.

**<u>CONCLUSION</u>**

This Court believes that Idearc failed to establish that Kimsey committed Fraud upon the Court because whether fraudulent material was submitted to the Court is disputable and because whether the material in question was fraudulent or not, it did not subvert the judicial process or harm the public interest. The harm was restricted to the parties. Accordingly, it is:

**ORDERED** that Plaintiff Idearc's Motion to Dismiss for Fraud upon the Court is **DENIED.**

Additionally, Kimsey of its own accord removed the allegedly offending exhibits from the record. Accordingly, it is:

ORDERED that Plaintiff Idearc's Alternate Motion to Strike Exhibits is **DENIED.**

Finally, there was no cognizable motion for Rule 11 sanctions, and this Court finds no Fraud upon the Court and thus no reason for sanctions. Accordingly, it is:

ORDERED that Plaintiff Idearc's request for sanctions and attorney's fees and Defendant's request for attorneys' fees are **DENIED**.

DONE AND ORDERED in Chambers in Tampa, Florida, this 31st day of March 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record