UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IDEARC MEDIA CORP.,
f/k/a VERIZON DIRECTORIES CORP.,

    Plaintiff/Counter-Defendant,

v.                                                   Case No. 8:07-cv-1024-T17-EAJ

KIMSEY & ASSOCIATES, P.A.,
d/b/a KIMSEY LAW GROUP,

    Defendant/Counter-Claimant.

_____

**ORDER ON SUMMARY JUDGMENT**

This cause is before the Court on Plaintiff/Counter-Defendant, Idearc Media Corp.'s, (Idearc) Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 78); Defendant/Counter-Claimant, Kimsey & Associates, P.A.'s (Kimsey) Motion for Summary Judgment (Doc. 79); Idearc's Memorandum in Opposition to Defendant/Counter-Claimant's Motion for Summary Judgment (Doc. 81); and Kimsey's Memorandum in Opposition to Plaintiff/Counter-Defendant, Idearc Media Corp.'s Motion for Summary Judgment (Doc. 82). Based on the following discussion, the Court grants Idearc's motion and awards, $1,704,843.50 in damages and denies Kimsey's motion.

**I. Relevant Procedural Background**

1. This case was commenced in June 2007 by Idearc primarily as a breach of contract action in diversity against Kimsey (Doc. 1).

2. In September 2007, Kimsey pled affirmative defenses to each count of the complaint and counter-claimed against Idearc for fraud in the inducement, negligent misrepresentation, conversion, and unjust enrichment (Doc. 5).

3. In September 2007, Idearc replied to the counter-claim with affirmative defenses (Doc. 7) and a motion to dismiss Counts III (conversion) and IV (unjust enrichment) (Doc. 8). Kimsey replied to the motion to dismiss (Doc. 12).

4. Amended pleadings were filed although they were similar to their originals (Docs. 52 and 57).

5. On November 26, 2008, Kimsey withdrew Exhibits marked A (Doc. 5-2) to Document 5, the original complaint and counter-claim (Doc. 69).

6. In January 2009, Kimsey voluntarily sought dismissal of its Count I (fraud in the inducement), Count II (negligent misrepresentation), Count III (conversion) and its affirmative defense of set-off (Doc. 77) without objection (Doc. 80) which the Court granted and then dismissed (Doc. 85).

7. In January and February, 2009, the instant cross motions for summary judgment were filed (Docs. 78 and 79) along with their respective responses (Docs. 81 and 82).

8. On March 31, 2009, the Court denied Idearc's motion to dismiss Kimsey's count of fraud upon the court and both parties' requests for attorneys fees (Doc. 84).

9. In May 2009, Idearc filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in United States Bankruptcy Court for the Northern District of Texas (Doc. 86). Over Idearc's objection (Doc. 87), the Court administratively closed the case pending conclusion of the bankruptcy proceedings.

10. The pending case was reopened in January 2011 because the bankruptcy issues had been resolved (Doc. 94).

## II. Factual Background

Although there is a somewhat lengthy procedural history and an amount of money at stake exceeding $1.5 million in this case, it is fairly straightforward. It is about phonebooks. Idearc, formerly Verizon Directories Corporation, is a purveyor of advertising, particularly in the form of telephone directories, or as they are colloquially known, phonebooks (Doc.1, p. 2). Idearc uses various forms of advertising in order to spread its clients' messages. One can advertise in the book itself, or purchase a banner ad, one that appears as a strip on the bottom front cover of the directory (Docs. 79, p.3; 79-7). A "shoutout" advertisement covers much of the remainder of the front page of the directory (Docs. 79-8; 81, fn. 4). Finally a "tip on" is an additional piece of paper or magnet appended to the front cover with a sticky substance with additional advertising on it (Docs. 78, p. 4; 79, pp.3-4; 79-7, pp. 6-7). It allows Idearc the opportunity to sell more surface area. Of course each form of advertising comes at a different cost and work differently. For example, the "tip on," while likely being the most pronounced form because of its location and because it is three-dimensional, has only a temporary ability to perform because it is designed to be moved or removed by the directory's user (although the advertiser hopes the user will keep the tip-on indefinitely)(Doc. 65-2, p. 4). The "tip on," by design, covers the "shoutout" advertisement until it is moved or removed by the user. It is specifically designed not to cover the banner advertisement at the bottom of the directory (Doc. 78-4, p. 4).

Kimsey is a law firm and engaged Idearc's services by purchasing a banner advertisement on many directories in the Tampa Bay area at significant expense (Docs. 1, 79-7, p. 4). That Kimsey did not pay all of the money due to Idearc is undisputed (Doc 78, p. 4).[1] Idearc asserts that it fulfilled its part of the contract and is due to be paid under it (Doc. 78). Kimsey asserts as defense and counterclaim that Idearc did not provide the paid-for service because its banner advertisement was covered by another client's "tip on" advertisement (in that the "tip on" was placed too low on the directory and obscured part of the banner) (Doc. 5, p. 3). Therefore, Kimsey has not paid Idearc, asserting that Idearc breached the contract and was also

---

[1] There is no discussion of this in Kimsey's Motion for Summary Judgment (Doc. 79) and as such there is no record to cite to, lending credence to Idearc's position that this element is undisputed.

3

unjustly enriched by the partial payments Kimsey had made (Doc. 5, p. 5). Finally, during the litigation there were allegations by Idearc that Kimsey manufactured its exhibits, allegedly-infringing directories (Doc. 65) which Kimsey removed from evidence (Doc. 69). Kimsey voluntarily dismissed a number of the counts in its counterclaim (Doc. 77).

### III. Idearc's Motion for Summary Judgment

Idearc argues that the Court should grant summary judgment for it on its breach of contract count and challenges Kimsey's counterclaim and affirmative defenses. Idearc argues that the elements of breach of contract as determined by Texas law are met, to wit: 1) existence of a valid contract, 2) performance or tendered performance by the plaintiff, 3) breach of contract by the defendant, and 4) damages caused by defendant's breach (Doc. 78, p. 17). The argument in support of its case is terse, but cogent, which is unsurprising as much of it is uncontested. Idearc excerpts a section of the contract and makes a plethora of billing information available to the Court.

Idearc then moves to Kimsey's counterclaim and Idearc's affirmative defenses to it. As Kimsey voluntarily dismissed Counts I, II, and III, for Fraud in the Inducement, Negligent Representation, and Conversion, respectively, the Court will not further discuss this portion of Idearc's Motion, nor will it detail these issues in the discussion below (Docs. 77 and 80). Idearc finally turns to Kimsey's unjust enrichment claim, and highlights that the fourth element of the claim under Florida law requires that there be an inadequate contractual remedy (Doc. 78, p. 24). Idearc excerpts a portion of the contract and points to it as showing that the contractual remedy is adequate and equitable and, therefore, that there are no legal grounds to allow for unjust enrichment, which arises in equity. *Id.*

### IV. Kimsey's Response to Idearc's Motion for Summary Judgment and Cross-Motion for Summary Judgment

Kimsey begins its memorandum of law in support of its motion for summary judgment with a dizzying history of advertising on telephone directories (Doc. 79, p. 3). It then argues that Idearc breached its contract with Kimsey to print Kimsey's advertisements on each book by "covering the ads," and therefore it was not Kimsey who breached the contract, but instead was Idearc (Doc. 79, p. 6). Kimsey then stipulates the same elements for breach of contract as Idearc, followed by an extensive discussion of materiality—that it is a question of fact, what materiality means, and how it is relevant to the present case (Doc. 79, pp. 7, 8, 13).

The law firm then moves to Idearc's claim for account stated, informing the Court of Texas law on the issue (Doc. 79, p. 18).[2] Second, Kimsey asserts its entitlement to summary judgment on Idearc's claim of open account (Doc. 79, p. 19). Next, Kimsey addresses its affirmative defenses to Idearc's claim—those of unjust enrichment and recoupment (Doc. 79, pp. 20-22, 23). Kimsey requests the Court to award attorneys' fees and costs pursuant to the contract (Doc. 79, p. 24) and concludes with a prayer for damages in the amount of $190,218.00. *Id.*

### V. Idearc's Response to Kimsey's Cross-Motion for Summary Judgment

Idearc responds to Kimsey's summary judgment for its claim of unjust enrichment in its response, and argues that Kimsey's statements of fact are conclusory and that the motion is lacking evidentiary substantiation (Doc. 81). Idearc then attacks Kimsey's analysis by arguing that while Kimsey correctly propounds the rule of law relevant to unjust enrichment, it does not have the evidence to support its claim. Simply put, Idearc argues that Kimsey lacks the factual basis, because it has no evidence, to which the Court can apply to the relevant law. It is here that Idearc raises its objection to Kimsey's evidence using the best evidence rule as support (Doc. 81, p. 10). The last point Idearc makes is that Kimsey has no basis to invalidate the contracts and, therefore, to evade liability.

### VI. Discussion

#### A. Standard of Review

The summary judgment standard is well known. Casebook law points to the words of Federal Rule of Civil Procedure 56(c), supported by the ubiquitous citations to *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) and *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986):

> Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-24. A material fact is one that "might affect the outcome of the suit under the governing law" and that all facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 248, 255. There is no genuine issue of material fact when "the record taken as a whole could not lead the rational trier of fact to find for the non-moving party." *Matsuhita*, 475 U.S. at 587.

---

[2] None of the counts except for breach of contract are pursued by Idearc in its motion for summary judgment (Doc. 78). However, they will be treated as a cross-motion for summary judgment.

The Eleventh Circuit Court of Appeals has embellished: if a reasonable fact-finder could draw an inference from the facts that introduces a genuine issues of material fact, summary judgment should not be granted. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th. Cir. 1988).

### B. Idearc's Motions for Summary Judgment for Breach of Contract

Perhaps surprisingly, these motions for summary judgment can be discussed in relatively short order, and much of it will be addressed using the law of evidence. Because both parties charge the other with breach of contract and most of the elements are uncontroverted, they will be addressed simultaneously. As noted, Idearc's claim for breach of contract is brief, but well stated. In fact, aside from who breached first, the matter is undisputed. There is no contest regarding the validity or enforceability of the contract. There is no question that Idearc performed, although to what extent there is dispute. Kimsey does not dispute the damages suffered by Idearc, should Idearc prevail, only that Idearc is not entitled to any damages because Kimsey did not breach the contract. Most importantly, it is uncontested that Kimsey did not pay Idearc all that it owed, and there is ample evidence of the billing Idearc sent to Kimsey which supports its claim that Kimsey owes on the contract (e.g. Docs. 78-2, pp. 16-36, Doc. 78-3). Therefore, unless it can be determined that Idearc first breached the contract by not properly printing the directories, Idearc's motion for summary judgment motion must be granted.

Kimsey does not contest any of Idearc's arguments except for the liability, as stated above. It argues strenuously that the placement of the advertisements in this case is material (Doc. 79). To borrow from the law of evidence, the point is irrelevant and therefore not cognizable because there is no evidence propounded by either party as to the location of the advertisements.

The crux of the issue is twofold–that Kimsey's assertions violate the best evidence rule and that the evidence adduced is not relevant to the claims made. First, Idearc asserts that Kimsey's averment, via affidavits, violates the best evidence rule, under Federal Rule of Evidence 1002 and cases interpreting it because the best evidence would be the directories themselves (Doc. 81).[3] If proffered evidence would violate the best evidence rule, it is inadmissible. *See* Fed. R. Evidence 1002. The word *writings* in the Rule, as defined in Federal

---

[3] The Court notes that the best evidence objection was also made during the testimony of Paul Margarone (Doc. 79-7, p. 11).

Rule of Evidence 1001(a), has a broad definition and so the Court finds no reason it would not be covered. The pertinent question is fairly simple: what is the best evidence of the placement of the advertisement on the cover of the directories in question? Clearly the answer must be the directories themselves, and they are not in evidence. Of course the assertion may be the made that only matters that are material will trigger the best evidence rule because the rule only requires an original to "prove the *content*," not, for example, to prove the writings exists. *See* 6 *Weinstein's Federal Evidence* §1002.05[1] (McLaughlin ed., 2d ed. rev.2007) [hereinafter Weinstein's]; *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994). Moreover, this is a particularly good example of a case where the exactness is "of more than average importance." Weinstein's at §1002.04[1]. The entire argument, from Kimsey's perspective, boils down to that it did not breach its contract because Idearc breached first by allowing the directories to be misprinted with the "tip-on" covering Kimsey's banner advertisement (or as Kimsey asserts, and which will be addressed below, that Idearc itself misprinted them.) Therefore, it is *critical* that the fact finder be able to *see* the allegedly misprinted directories in order to evaluate whether or not the contract was breached. And this, in turn, triggers the best evidence rule under Federal Rule of Evidence 1002. Without the directories in evidence the affidavits referring to them (Doc. 79-2) violate the best evidence rule and must be excluded.

### C. Kimsey's Motion for Summary Judgment

Second, and alternatively, even if the affidavits could be otherwise admitted, they are irrelevant to the counts alleged. They merely state that different people saw Kimsey's advertisement covered by a tip-on. They neither indicate that *Idearc* misprinted the directories nor that Idearc caused them to be misprinted. Further, the tip-ons are designed to be moved (Doc. 79-7, pp. 6-7), so without evidence of how it came to be that they were located where they were, one could speculate endlessly about how it happened. While these sorts of conclusory allegations may even be insufficient to be sustained on a motion to dismiss, they are completely insufficient upon a motion for summary judgment. First, there is a higher evidentiary burden at the summary judgment stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Second, only *disputed* issues of material fact preclude summary judgment under *Celotex*, and for that matter, the Rule itself, which requires a "genuine issue". Fed. R. Civ. P. 56(c), *Celotex*, 477 U.S. at 322-24. Even more on point is *Anderson*, which clearly states that the material fact must affect the outcome of the case. 477 U.S. at 248. Certainly, the location of the advertisements by themselves

7

do not affect the outcome of the case because they do not show in any way that Idearc tortiously interfered with its own contract—that it was intentional or negligent. Of course, there need be no tort in order for a party to prevail on a breach of contract claim. But here there is no indication of any breach of Idearc's contract with Kimsey.

Frankly, Kimsey's argument is not persuasive because it is somewhat nonsensical. The Court can see no reason why Idearc would not properly print the directories. It had nothing to gain by its own misprint (and of course, Idearc does not print its own directories) and also had nothing to gain by instructing its printer to do so. Further, Idearc's agent, David DeLaMater, averred that its specifications direct the printer *not* to cover the banner advertisement with the tip-on (Doc. 78-4, p. 4). If another advertiser requested it (in order to disadvantage Kimsey), perhaps somehow Kimsey could make an argument. However, given the damages at issue here, it would be at such enormous expense as to be ridiculous. Even if the Court could make assumptions, and it cannot, the Court could not assume that a savvy (or even not savvy) corporation would risk such liability. Moreover, this subpoint takes the argumentation somewhere it need not go: Kimsey has not met its burden of proof on this point. It has not introduced any evidence to support its allegations. Even were its affidavits by directory users (Doc. 79-2) to be admitted, they are irrelevant on this point. Kimsey has made no sufficient argument in favor of the breach of contract count of its motion for summary judgment, which, therefore, must be denied.

### D. Idearc's Additional Counts

Idearc cannot doubly recover and prevailing on the remainder of its counts would cause it to do so. *See Sys. Components Corp. v. Fla. DOT*, 14 So. 3d 967, 978 (Fla. 2009); *see also Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264 (Tex. 2004)(discussing how a court cannot allow a plaintiff to prevail on both its permanent nuisance and permanent injunction claims because it would cause a double recovery). Therefore, on all of Idearc's other counts and alternative theories, its motion for summary is denied without further comment. The Court abstains from further comment on the merits of any further claims. Because the Court will not review Idearc's other counts including account stated and open account, those portions of the Motion for Summary Judgment are denied as moot. The Court expresses no view on Kimsey's argument in opposition to the claims.

### E. Kimsey's Additional Counts

As Kimsey has not recovered on its breach of contract claim its other claims must be evaluated. However, Kimsey's fatal evidentiary weakness on the breach of contract claim also causes its additional claims to be unsupported and, therefore, unpersuasive.

#### 1. Kimsey's Claim of Unjust Enrichment

Regarding Kimsey's claim for unjust enrichment (Doc. 79, p. 20-22), Texas law is that a party can recover under a theory for unjust enrichment when it has suffered a harm and another party has obtained a benefit by fraud, duress or undue advantage. *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The record is devoid of any showing of fraud or duress. Additionally, there is no showing of any undue advantage. Kimsey asserts that Idearc misrepresented to Kimsey that it was selling visible, unobstructed advertising. Putting aside that even if Idearc has made that representation it is possible its advantage was not "undue," there is no valid indication that the advertising was obstructed. Without any valid proof of this obstruction, Kimsey cannot make out a claim under Texas law for unjust enrichment. Even under Florida law, in which

> the elements of a cause of action for unjust enrichment are: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value[,]

there is no evidence to support the inequity of Idearc's retention of the payments made by Kimsey and that Idearc did not pay full value. *Media Services Group, Inc. v. Bay Cities Communications, Inc.*, 237 F.3d 1326, 1330 (11th Cir. 2001). The gap in the argument is that there is no support for the contention that Idearc did not fulfill its part of the bargain, therefore rendering Kimsey's payments inequitable. All of the evidence shows instead that Idearc fully performed and that Kimsey did not. The Court recognizes that the cause of action for unjust enrichment essentially creates an equitable cause of action similar to the legal action for breach of contract. The reasoning used in evaluating Kimsey's breach of contract claim applies to unjust enrichment as well. It would be anomalous and incoherent for the Court to recognize Kimsey's liability to Idearc under breach of contract but to reverse course regarding unjust enrichment. Moreover, a party cannot succeed on a claim in equity where there is a valid claim in law, particularly under a theory of unjust enrichment. *See Nautica Int'l Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998). Allowing parties to plead in the alternative is a

procedural device and will not allow for recovery on both counts, as discussed more thoroughly above.

### 2. Kimsey's Claim for Recoupment

As far as Kimsey's claim for recoupment (Doc. 79, p. 23), the Court has already determined that Kimsey has not adduced sufficient evidence for its claims. Turning to Kimsey's argument supporting its claim for recoupment, Kimsey directs the Court to *Sommers v. Concepcion*, which states that, "[t]here are two general requirements for recoupment: (1) some type of overpayment must have been made, and (2) both the creditor's claim and the amount owed the debtor must arise from a single transaction." 20 S.W. 3d 27, 34 (Tex. App. 2000). It is uncontested that the claims all arise from a single transaction (although this case entails a series of related transactions.) In *Sommers*, the court held that "even a broad reading of the pleadings does not reveal an allegation of an overpayment." *Id.* While that is clearly not so in the case *sub judice*, Kimsey has failed to show that there is any overpayment. Following from the holding in favor of Idearc's breach of contract claim, the opposite is true. Instead of an overpayment by Kimsey to Idearc there is a gross underpayment by Kimsey. First, given the paltry payments made to Idearc by Kimsey (in relationship to the amount owed, that is) any finding of *overpayment* would be hard to make, although admittedly it is possible. More importantly, because Kimsey offers no valid evidence in support of its assertion of the misprinting (or *arguendo* Idearc's malfeasance or nonfeasance in regard to the printing process), there can be no finding of overpayment to Idearc by Kimsey because Idearc performed its part of the bargain as agreed. Therefore the parties will be held to the terms of their contract. The price of the services provided is of no moment—Idearc performed its part of the bargain. Kimsey will be held to compensate Idearc for failing to complete its portion.

### 3. Attorneys Fees and Damages

Kimsey is not a prevailing party. Therefore, it will not be awarded attorneys fees pursuant to its contract with Idearc (Doc. 3-2, p. 2), nor will it recover any damages. The Court will reserve jurisdiction as to attorneys fees and costs pursuant to the contract in favor of Idearc (Doc. 78, p. 25). Accordingly, it is:

**ORDERED** that Idearc's motion for summary judgment (Doc. 78) is **granted** in the amount of $1,704,843.50, to be paid by Kimsey. Kimsey's motion for summary judgment (Doc. 79) is **denied**. The Clerk of Court is directed to enter a judgment in favor of Idearc Media

Corporation and against the defendant, Kimsey and Associates, P.A. and to close this case. The Court will address any claims for fees and costs after closure of the case.

DONE and ORDERED in Chambers in Tampa, Florida, this 25th day of April, 2011.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to: All parties and counsel of Record.